1  SMITH & HENNESSEY, PLLC
   Geoffrey P. Knudsen (SBN 45451)
2  James A. Smith, Jr. (*Pro Hac Vice*)
   Whitney I. Furman (*Pro Hac Vice*)
3  316 Occidental Avenue South, Suite 500
   Seattle, Washington 98104
4  Telephone:  (206) 292-1770
   Facsimile:  (209) 292-1790
5  Email:  gknudsen@smithhennessey.com
           jas@smithhennessey.com
6          wfurman@smithhennessey.com

7  NEWMAN | DU WORS, LLP
   John Du Wors (SBN 233913)
8  1201 Third Avenue, Suite 1600
   Seattle, Washington 98101
9  Telephone:  (206) 271-2800
   Email:  john@newmanlaw.com
10 Attorneys for Defendant Executive Trading, LLC

11 NICHOLAS & BUTLER, LLP
       Craig M. Nicholas (SBN 178444)
12     Alex M. Tomasevic (SBN 245598)
       Tracy J. Jones (SBN 263632)
13 225 Broadway, 19th Floor
   San Diego, California 92101
14 Telephone:  (619) 325-0492
   Facsimile:  (619) 325-0496
15 Email:  cnicholas@nblaw.org
           atomasevic@nblaw.org
16         tjones@nblaw.org
   Attorneys for Plaintiff, The Upper Deck Company, Inc.
17

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UPPER DECK COMPANY, INC., a Nevada corporation, | Case No. 12CV1923 CAB JMA |
| Plaintiff | JOINT MOTION FOR DETERMINATION CONCERNING DISCOVERY DISPUTE AND STIPULATION TO EXTEND DISCOVERY DEADLINES |
| v. | |
| EXECUTIVE TRADING, LLC, a Washington limited liability company, | |
| Defendant. | **Hon. Cathy Ann Bencivengo**<br>**Mag. Judge: Hon. Jan M. Adler** |

JOINT MOTION TO EXTEND DISCOVERY CUTOFF AND FOR DETERMINATION CONCERNING DISCOVERY DISPUTE AND STIPULATION TO EXTEND DISCOVERY DEADLINES

## I.   INTRODUCTION

Defendant Executive Trading, LLC ("Defendant" or "Executive Trading") and Plaintiff The Upper Deck Company, Inc. ("Plaintiff" or "Upper Deck") hereby jointly request the Court's assistance in resolving a discovery dispute concerning Upper Deck's document production in this case. Pursuant to Magistrate Judge Adler's Chamber Rules, the Parties have met and conferred regarding this issue telephonically as Defendant's counsel reside outside of San Diego, California. In addition, for the good cause identified herein, the Parties respectfully request that the Court amend the Scheduling Order in this case to allow for the necessary time to complete fact and expert discovery, by extending those deadlines by a period of at least 45 days.

## II.   DEFENDANT'S POSITION ON THE ISSUES IN DISPUTE

### A.   The Documents Sought From Upper Deck Are Highly Relevant, Discoverable and Material to the Claims and Defenses In this Case.

#### 1.   Executive Trading's Counterclaims.

Executive Trading has asserted multiple counterclaims against Upper Deck which arise from the parties' dealings and negotiations to develop and market Executive Trading's highly proprietary idea for set of political trading cards, which were provided to Upper Deck under the terms of a July 9, 2010 Confidential Disclosure Agreement ("Confidential Agreement"). (See Docket No. 7, "Answer".) After months of negotiations between the parties about their intended joint business venture, Upper Deck informed Mr. VanGrinsven that it would not be producing a set of political trading cards leading up to the 2012 presidential election and could not move forward with their plans for a business arrangement. (See Id. at ¶¶ 35-37.) However, six months later, Upper Deck issued a press

release announcing that it was producing a "World of Politics" trading card line, embodying Executive Trading's proprietary ideas.[1] (See Id. at ¶¶ 38-40.)

### 2. Executive Trading's Good Faith Attempts To Obtain Documents From Upper Deck.

On January 18, 2013, Executive Trading served its requests for production under Rule 34 on Upper Deck. Some of those requests sought communications relating to Executive Trading and the World of Politics cards, including as follows:

> RFP No. 3: Produce all documents that refer or relate in any way to Executive Trading, including without limitation all agreement, notes, memoranda, meeting minutes, reports, communications and/or correspondence.

> RFP No. 16: To the extent not produced in response to the foregoing requests, produce all documents that refer or relate in any way to Upper Deck's World of Politics cards, including without limitation all agreements, notes, emails, memoranda, meeting minutes, reports, communications or press releases, from 2010 through the present.

(Furman Dec. at ¶ 3, Ex. A.)

Executive Trading also requested documents relating to Upper Deck's gross revenue:

> RFP No. 17: To the extent not produced in responses to the foregoing requests, produce all documents that demonstrate or reflect Upper Deck's gross revenue derived from sales of World of Sports or World of Politics cards.

(Id. at Ex. A.)

Upper Deck's initial document production was substantially deficient in many respects. (Furman Dec. at ¶ 3.) In an attempt to resolve these issues, Executive Trading's counsel, Whitney I. Furman, wrote letters and engaged in good faith in several meet and confer sessions with Upper Deck's counsel, Tracy

---

[1] While Executive Trading was attempting to communicate with Upper Deck about these issues, and while agreeing to honor Upper Deck's request to respond to Executive Trading's Evidence Rule 408 communication, Upper Deck filed this action seeking a declaratory judgment that it be permitted to continue producing and marketing the "World of Politics" trading cards without any obligation to account to Executive Trading. (Id. at ¶ 24.)

JOINT MOTION TO EXTEND DISCOVERY CUTOFF AND FOR
DETERMINATION CONCERNING DISCOVERY DISPUTE AND
STIPULATION TO EXTEND DISCOVERY DEADLINES - 2

Jones, about the deficiencies in Upper Deck's document production. (See Id. at ¶ 4.) Because counsel are not located in the same county, these conferences occurred telephonically pursuant to Local Federal Rule 26.1(a). (Id.)

### a. Upper Deck Cannot Shield Relevant Documents To or From Its Former In-House Counsel, From Discovery Unless They Contain Legal Advice.

Upper Deck has not clarified whether it has produced all documents from Michael Bernstein, its former in-house counsel, which contain relevant, non-privileged communications in this matter. Like other Upper Deck officers and personnel, Mr. Bernstein also attended numerous business meetings between Executive Trading and Upper Deck, and also executed the Confidential Disclosure Agreement on Upper Deck's behalf. (Answer at 12, ¶ 11.) Generally, "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b). Upper Deck cannot shield relevant, non-privileged documents in this case merely by providing them to in-house counsel.[2] The Court should order Upper Deck to produce any such non-privileged documents. If the documents contain legal advice that may be appropriate for redaction, Upper Deck should so indicate on a privilege log.

### b. Documents Relating To Upper Deck's Gross Revenue and Financial Materials Are Not Privileged and Are Highly Relevant To Executive Trading's Damages.

In its RFP No. 17, Executive Trading requested "all documents that demonstrate or reflect Upper Deck's gross revenue derived from sales of World of Sports or World of Politics cards." (Furman Dec., Ex. A.) On July 25, 2013, Upper Deck produced summary financials in the form of a "sub ledger" ledger

---

[2] If a party withholds information in discovery on the grounds that it is privileged, the party must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5).

JOINT MOTION TO EXTEND DISCOVERY CUTOFF AND FOR
DETERMINATION CONCERNING DISCOVERY DISPUTE AND
STIPULATION TO EXTEND DISCOVERY DEADLINES - 3

related to its gross revenues from the sales of World of Sports or World of Politics cards and a summary prepared for the purposes of this litigation reflecting its gross revenue from those products. (Id. at ¶¶ 14, 18.) Upper Deck refuses to produce the highly relevant source documents on which those summaries are based, including Executive Trading is entitled to all of the source documents related to Upper Deck's gross revenue from the products at issue in this case, including all ancillary revenue streams, overhead, production and manufacturing costs, among other relevant data. Executive Trading's business valuation expert needs this information in order to begin to calculate Defendant's damages and/or a reasonable royalty rate flowing from Upper Deck's World of Politics cards. (Id. at ¶ 18.)

Under the Copyright Act, a copyright owner is allowed to recover "the copyright owner's actual damages and additional profits of the infringer." 17 U.S.C. § 504(a). "Actual damages are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer." Polar Bear Prods. v. Timex Corp., 384 F.3d 700, 708 (9th Cir. 2004) Here, it would be inappropriate to limit the scope of discovery, because Executive Trading is entitled to recover Upper Deck profits from infringement in the form of both "direct profits—those that are generated by selling an infringing product—and indirect profits—revenue that has a more attenuated nexus to the infringement."[3] Id. at 710.

---

[3] In establishing the defendant's profits from infringement, the plaintiff must only show proof of the infringer's gross revenue—the infringer is "required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Courts require copyright defendants to produce more than just limited financial summaries. In Cockburn v. SWS Indus., 2012 U.S. Dist. LEXIS 48632, 11 (W.D. Wash. Apr. 4, 2012), the plaintiff sued the defendant selling products that allegedly infringed her copyrighted designs. In response to discovery requests for "financial documents relating to the revenue earned by Defendant as a result of its sales," the court ordered the defendant to produce the requested source financial materials, including its tax returns. Id.

JOINT MOTION TO EXTEND DISCOVERY CUTOFF AND FOR
DETERMINATION CONCERNING DISCOVERY DISPUTE AND
STIPULATION TO EXTEND DISCOVERY DEADLINES - 4

Similarly, a defendant "may be required to make restitution if he is unjustly enriched at the expense of another. A person is enriched if he receives a benefit at another's expense," defined as "any form of advantage." <u>Federal Deposit Ins. Corp. v. Dintino</u>, 167 Cal. App. 4th 333, 346 (Cal. App. 4th Dist. 2008). Executive Trading is entitled to all of the requested financials, including Upper Deck's tax returns and all source materials reflected in the summary financials from 2010 to the present. The protective order in this case will provide ample protection.

### c. There Is No Basis For Upper Deck To Redact Information Related To Its Vendors and Distributors of The World of Politics and World of Sports Cards.

On July 25, 2013, Upper Deck produced documents which reflected limited and heavily redacted data regarding the gross revenue Upper Deck purports to have received from the World of Politics/World of Sports cards at issue in this matter. (Furman Dec. ¶¶ 16-17.) On July 29, counsel for Upper Deck stated that the redacted information "lists the vendor/distributor. Upper Deck's vendor and distributor lists are highly sensitive and not relevant to this case." (<u>Id</u>.) Upper Deck's channels of distribution for the infringing products are reasonably calculated to lead to the discovery of admissible evidence.

### B. The Parties Agree That A Continuance of the Case Schedule Is Necessary In Order To Complete the Necessary Discovery In This Case.

As a result of Upper Deck's failure to produce the necessary documents, and its ongoing failures to clarify its position on whether it would provide Executive Trading with numerous categories of information, Executive Trading cannot complete discovery, or provide its expert with the necessary information, under the current case schedule. Were it not for counsel's continued representations that Upper Deck would produce documents or clarify Upper Deck's position, this

motion would have been filed as a motion to compel. (See Furman Dec. ¶¶ 19-21.) The parties agree that, under the circumstances, good cause exists to amend the Court's Scheduling Order and respectfully request that the Court extend all dates on the case schedule by a period of 45 days.

## III.

## PLAINTIFF'S POSITION ON THE ISSUES IN DISPUTE

### A. Introduction

Plaintiff contends that this motion is unnecessary because Plaintiff has complied with its discovery obligations and produced all non-privileged responsive documents. There are only three remaining issues that are the subject of this motion: (1) Plaintiff's not having produced Michael Bernstein's correspondence concerning Executive Trading, despite agreeing to do so; (2) the Parties' extending discovery deadlines; (3) Plaintiff's refusal to produce its tax returns, entire general ledger, and source documents.

(1) By August 15, 2013, Plaintiff agrees to produce all of Michael Bernstein's correspondence concerning Executive Trading which is not privileged. The delay in producing the correspondence concerned technical issues regarding the hardware in which they are stored. Counsel believes that the issue can be cleared up by August 15, 2013. (Declaration of Tracy J. Jones ("Jones Dec."), ¶ 2.)

(2) Plaintiff stipulates to the extension of the deadlines proposed by Defendant. (Jones Dec., ¶ 3.)

(3) The only remaining issue is that Plaintiff refuses to produce its tax returns, entire general ledger, and source documents. Plaintiff has produced a subset of its general ledger which reflects the expenses and revenue relating to the

World of Sports line of cards along with a summary showing that Plaintiff only made $36,000 on the entire line of cards. (Jones Dec., ¶ 4.) The Court should not order production of the tax returns or general ledger because Plaintiff already has the documents it needs to determine gross revenue, expenses, and the amount of any claimed disgorgement of profits from the World of Sports/Politics cards. (*Id.*) Furthermore, Plaintiff redacted its vendor/distributor information from the general ledger because that information is highly sensitive and not at all relevant to Defendant's claimed damages. This issue is the only one discussed below given Plaintiff's stipulation concerning the other issues.

### B. Plaintiff Produced Political Trading Cards and in Keeping with That Tradition, in 2011, It Independently Developed the World of Politics Inserts to Its World of Sports Line of Trading Cards

Plaintiff is world-wide sports and entertainment company that, among other things develops and sells trading cards. (Complaint, ¶ 1.) Since the 1990s, Plaintiff has developed lines of American history and politics trading cards, sometimes featuring Presidents. (*Id.* at ¶ 13.) In February 2012, Plaintiff began to randomly insert into packs of its "World of Sports" trading cards limited-edition "World of Politics" cards. (*Id.* at ¶ 15-16.) The "World of Politics" line consists of nine industry-standard size cards featuring only the 2012 Presidential candidates. (*Id.* at ¶ 16-17.) Defendant contends that Plaintiff's "World of Politics" cards infringe on a line of educational, non-industry standard size political trading cards Defendant was developing, which featured a wide-range of political figures using a format wholly different than the "World of Politics" cards.

Defendant propounded requests for production of documents and Plaintiff responded to them on February 22, 2013. The only Request asking for financial documents states: "To the extent not produced in responses to the foregoing

requests, produce all documents that demonstrate or reflect Upper Deck's gross revenue derived from sales of World of Sports or World of Politics cards. (Jones Dec., ¶ 4 (RFP No. 17).) Plaintiff did just that by producing a subset of its general ledger filtered for just the World of Sports entries. (*Id*.) Yet, Plaintiff contends that it is entitled to Plaintiff's tax returns, all of its general ledger, and source documents, which highly sensitive, irrelevant, and completely unnecessary for Plaintiff to determine the value of its claim for damages or unjust enrichment.

### C. This Motion is Untimely

Under Judge Adler's Chamber Rules, a Joint Motion for Determination of Discovery Dispute must be brought within 45 days of the date written responses were served. Plaintiff has been engaging in a rolling production of documents. (Jones Dec., ¶ 5.) However, the written responses were served February 22, 2013, meaning that Plaintiff had until April 8, 2013 to file this motion. (*Id*.) It has been almost four months since the responses have been served. (*Id*.) The Court may refuse to hear this motion for failure to comply with Chamber Rules.

### D. The Court Should Not Order Production of Plaintiff's Tax Returns, General Ledger, or Tax Returns

The Court should not order Plaintiff to produce its tax returns or general ledger for a number of reasons. First, there is no pending request requiring their production. Request for Production No. 17 merely asks for documents demonstrating gross revenue from the World of Sports/Politics cards. Plaintiff has produced documents showing the gross revenue. Plaintiff's tax returns would not contain this information or any other information relevant to Defendants claims. Nor would extraneous portions of the general ledger or source documents like invoices or purchase orders.

Second, the tax returns and the general ledger as a whole are not relevant to

this dispute which concerns a certain product—the World of Politics cards. Defendant is attempting to go on a fishing expedition to acquire highly sensitive financial documents which in no way pertain to Defendant's claims. Defendant's request is entirely overbroad. The Court should not order these documents produced.

Third, Defendants rely on *Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004) and *Cockburn v. SWS Indus.*, No. C10-1566RSL, 2012 U.S. Dist. LEXIS 48632, 2012 WL 1144965 (W.D. Wash. Apr. 4, 2012) for the proposition that source documents and tax returns are required to be produced in these types of cases. Both cases are distinguishable.

*Polar Bear* is not even a case concerning discovery. *Polar Bear, supra*, 384 F.3d at    *Polar Bear* actually supports the Court's refusing to order production of tax records and the entire general ledger, given that the plaintiff in that case was able to calculate both direct and indirect profits from the defendant's sales records, which Plaintiff here has already produced. *Id*. at 710-711.

In *Cockburn,* the defendant was ordered to produce income materials including invoices, purchase orders, and collection letters demonstrating income or revenue received from the sale of certain products. *Cockburn, supra*, 2012 WL 1144965 at *2. In *Cockburn*, defendant only offered to produce revenue figures (not its general ledger). *Id*. Plaintiff has produced revenue figures *and* portions of its general ledger, which summarizes each of the source documents (invoices, purchase orders, etc.)

If Defendant were required to produce the over 500 invoices/purchase orders evidenced on the general ledger, it would take an estimated 50 hour's worth of work to compile, review, and redact the documents. In the end, Plaintiff would

not be possess any more substantive information than is already has via its possession of relevant entries on Defendant's general ledger.

The Court should refuse to require production of the tax returns and general ledger as a whole.

DATED this 30 day of July, 2013.

| SMITH & HENNESSEY PLLC | NICHOLAS & BUTLER, LLP |
|---|---|
| /s/ Whitney I. Furman<br>James A. Smith, Jr.<br>Geoffrey P. Knudsen<br>Whitney I. Furman<br>Attorneys for Executive Trading, LLC | By: /s/ *Tracy J. Jones*<br>Craig M. Nicholas<br>Alex M. Tomasevic<br>Tracy J. Jones<br><br>Attorneys for Plaintiff The Upper Deck Company, Inc. |

NEWMAN |DU WORS

John Du Wors
Attorney for Executive Trading, LLC